Alexandra "Sasha" Selfridge (Bar No. 247063)
E-mail: sasha.selfridge@procopio.com
David W. Gouzoules (Bar No. 321328)
E-mail: david.gouzoules@procopio.com
PROCOPIO, CORY, HARGREAVES &
  SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Plaintiff Gleiberman Properties Inc.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEIBERMAN PROPERTIES INC., dba MG PROPERTIES GROUP, a California corporation;<br><br>Plaintiff,<br><br>v.<br><br>EVANSTON INSURANCE COMPANY, an Illinois corporation;<br><br>Defendant. | Case No. **'23CV0356 JLS  AGS**<br><br>**COMPLAINT for:**<br><br>**(1) DECLARATORY RELIEF (DUTY TO DEFEND);**<br>**(2) BREACH OF CONTRACT;**<br>**(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH); AND**<br>**(4) SPECIFIC PERFORMANCE**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff GLEIBERMAN PROPERTIES INC., dba MG PROPERTIES GROUP, ("MG Properties" or "Plaintiff") alleges as follows:

MG Properties is currently defending itself against a class action complaint filed by Christian Yu, Rachel Whillier, and Bianca Hazel in San Diego Superior Court generally alleging that MG Properties is liable to former residents of its apartment complexes for, *inter alia*, improper security deposit retention practices, late fee charges, and debt collection efforts (the "Yu Litigation"). MG Properties promptly tendered a claim to its liability insurer, Evanston Insurance Company ("Evanston," "Insurer," or "Defendant"), and requested that Evanston provide coverage and defend the action. Rather than fulfilling its broad duty to defend its insured, however,

Defendant denied coverage and has steadfastly refused to defend the action, citing inapplicable policy exclusions and treating its *preferred* reading of the policy as the *only* reading. Defendant's bad faith denial has resulted in MG Properties being left to pay for its own defense of the Yu Litigation, the costs of which exceed $75,000. Plaintiff brings the instant action to obtain a judicial declaration of coverage and recover damages incurred as a proximate result of Defendant's breach of its coverage obligations.

## THE PARTIES

1. Plaintiff MG Properties is a California corporation, having its principal place of business in San Diego, California, and is a citizen of California for purposes of diversity.

2. Plaintiff is informed and believes, and on that basis alleges, that Evanston is an Illinois corporation, having its principal place of business in Illinois, and is a citizen of Illinois for purposes of diversity.

## JURISDICTION AND VENUE

3. This action is one in which this Court has original jurisdiction in that it is a civil action in which there is diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff is a California corporation having its principal place of business in California; Evanston is an Illinois corporation having its principal place of business in Illinois. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. These claims for relief arise under the Court's jurisdiction to hear, entertain, and finally decide all matters and claims for relief arising under and pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332(a) because all claims for relief arise out of the same case or controversy as existing among Plaintiff and Defendant.

5. This Court has specific and general personal jurisdiction over Defendant. Plaintiff is informed and believes that Evanston is authorized to transact insurance

business in the State of California, including the issuance of insurance policies in California. The policy of insurance issued to Plaintiff at issue here, Policy Number MKLV5PEO000629, was issued to MG Properties at its San Diego address.

6. Venue is properly found in the Southern District of California in that the transactions complained of or a substantial part thereof occurred in the County of San Diego, California, where a number of the properties at issue, MG Properties, and the underlying Yu Litigation, for which insurance coverage is sought, are located. 28 U.S.C. § 1391(b).

## THE UNDERLYING LITIGATION

7. This insurance dispute arises out of an underlying litigation, the Yu Litigation. The original complaint alleging violations of security deposit policies was filed in San Diego Superior Court on February 26, 2021, and a new complaint alleging improper late fee policies was filed on August 9, 2021. The two complaints were consolidated and amended in a filing on October 7, 2021. The Yu Litigation plaintiffs allege that MG Properties improperly retains tenant security deposits, charges excessive late fees, and employs unfair debt collection practices. The Yu Litigation plaintiffs bring three causes of action on behalf of a putative class: one for violation of California Civil Code § 1950.5, one for violation of California Civil Code § 1671, and one for violation of California Business and Professions Code § 17200. The Yu Litigation plaintiffs seek damages as well as injunctive relief and restitution. A true and correct copy of the operative complaint is attached hereto as Exhibit A and is incorporated by reference. MG Properties has denied and continues to deny the allegations asserted therein.

8. As is relevant to this action, the Yu Litigation plaintiffs allege that MG Properties caused improper bills and collection notices to be sent to former tenants, which "resulted in damages to former tenants both through the collection of such amounts and by the reporting of such alleged debts to third-parties, defaming former tenants, damaging their credit and impairing their ability to rent other apartments."

(First Amended Complaint ["FAC"], ¶ 20.)  The plaintiffs also allege that MG Properties charged excessive late fees and wrongfully retained tenants' security deposits by, among other things, "billing former tenants for normal wear and tear" and "charging for labor and services that were not performed or required…." (FAC, ¶¶ 8, 19.)

9. The Yu Litigation complaint alleges that maintenance of the matter as a class action is appropriate pursuant to California Code of Civil Procedure § 382 because, among other things, "Plaintiff and all Plaintiff Class members sustained injuries and damages arising from Defendants' common course of conduct, and those injuries and damages were caused directly by the Defendants' wrongful conduct in violation of law as alleged." (FAC, ¶ 36.)

10. The Yu Litigation complaint seeks a number of forms of relief, including declaratory and injunctive relief, penalties, and "actual damages sustained by Class members, including but not limited to, amounts paid in late fees." (FAC, pp. 20-21.)

## THE EVANSTON POLICY

11. On or around June 8, 2020, Evanston, in consideration of premiums paid, issued a Professional Liability insurance policy, Policy No. MKLV5PEO000629 (the "Policy") to Plaintiff.  The policy period was for May 15, 2020 to May 15, 2021.  A true and correct copy of the Policy is attached hereto as Exhibit B and is incorporated by reference.

12. The named insured on the Policy is Gleiberman Properties, Inc., d/b/a MG Properties Group, located at 10505 Sorrento Valley Road, Suite 300, San Diego, CA 92121.  The Policy contains a limit of liability of $1,000,000 per claim with an aggregate limit of liability of $1,000,000.

13. The Policy provides, in relevant part, that Evanston:

> shall pay on behalf of the Insured all sums in excess of the Deductible stated in the Declarations which the Insured becomes legally obligated to pay as Damages and Claim Expenses incurred as a result of a Claim first made against the Insured during the Policy Period …by reason of a:

1.      Wrongful Act; or

2.      Personal Injury;

in the performance of Professional Services rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible….

(Ex. B, p. 16.)

14.     "Claim" is defined in the Policy to mean the service of suit against the insured, and "Claim Expenses" is defined to mean "reasonable and necessary amounts incurred by [Evanston], or by the Insured with the prior written consent of [Evanston], in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part…." (Ex. B, p. 20.)

15.     "Damages" is defined in the Policy to mean "the monetary portion of any judgment, award or settlement, including punitive damages where insurable by law; however, Damages shall not include" certain enumerated types of sums which do not include the damages alleged by the Yu Litigation plaintiffs.  (Ex. B, p. 20.)

16.     "Professional Services" is defined in the Policy to include "Property Management Services," which in turn includes "[d]evelopment and implementation of management plans and budgets," "[s]olicitation, evaluation, and securing of tenants and management of tenant relationships, collection of rent, and processing evictions" and "[d]evelopment, implementation and management of contracts and subcontracts necessary to the daily functioning of real property."  (Ex. B, pp. 22, 40-41.)

17.     "Wrongful Act" is defined in the Policy to mean "a negligent act, error or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and includes an Interrelated Wrongful Act." (Ex. B, p. 23.)

18.     "Personal Injury" is defined in the Policy to mean "[l]ibel, slander, or defamation;" invasion or infringement of the right to privacy or publicity; malicious prosecution, abuse of process, false arrest or false imprisonment; and humiliation or infliction of emotional distress. (Ex. B, pp. 21-22.)

19. Notably, the Policy does not contain an allocation provision, and is therefore silent as to the procedure or methodology to be followed when an insured incurs a loss that is covered under the policy, but also simultaneously faces claims the Insurer contends are not covered.

20. On information and belief, at all pertinent times, the required premiums were paid with respect to the Policy and the Policy was in full force and effect related to the claims set forth in this Complaint.

21. Plaintiff has performed in a timely manner all conditions and covenants to be performed by insureds under the Policy, or has by virtue of Defendant's conduct been excused from doing so.

## DEFENDANT DENIES COVERAGE

22. On March 16, 2021, MG Properties submitted the original complaint in the Yu Litigation to its broker, SullivanCurtisMonroe, who in turn tendered the suit to Evanston. MG Properties requested that Evanston provide coverage and defend MG Properties.

23. On May 28, 2021, Defendant issued a letter to MG Properties in which it denied coverage. Evanston's stated bases for denial of coverage were: (i) the Policy excluded coverage for any claim based upon or arising out of any "conversion, misappropriation, commingling of or defalcation of funds or property;" (ii) the Policy excluded coverage for any claim based upon, arising out of, or in any way involving the "gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled;" (iii) the Policy excluded coverage for any claim based upon or arising out of any actual or alleged violation of any law regarding "business competition [or] unfair trade practices"; and (iv) the complaint only sought restitution, which did not qualify as "damages" under the Policy's definition of same. Defendant further reserved its rights on ten other grounds.

24. Counsel for Plaintiff responded to the coverage denial letter on August 9, 2021. In that letter, counsel for Plaintiff reminded Defendant of its broad duty to

defend, and explained why the exclusions relied upon by Defendant did not serve to bar coverage. As set forth in MG Properties' August 9, 2021 letter, and as is relevant to the present suit, the "duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." *Buss v. Superior Court*, 16 Cal. 4th 35, 36 (1997). Evanston may only deny coverage if there is "conclusive evidence demonstrating that" the cited exclusions apply. *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-39 (2002).

25.  Counsel for Plaintiff and counsel for Defendant exchanged additional correspondence between September 2021 and December 2022 regarding the coverage dispute. Defendant, however, has refused to reconsider its position, including to consider Personal Injury as a basis for coverage, and continues to deny MG Properties a defense in the Yu Litigation. Throughout that time period and through the present day, Plaintiff has thus been forced to pay out of pocket to defend itself in the Yu Litigation.

## FIRST CAUSE OF ACTION

### (Declaratory Relief– Duty to Defend)

26.  Plaintiff re-alleges and incorporates by reference the above and below allegations of this Complaint as if fully set forth herein.

27.  By virtue of Evanston's repeated and continued denial of its defense obligations owed to MG Properties in the Yu Litigation, an actual and justiciable controversy exists between Plaintiff, on the one hand, and Defendant, on the other hand, regarding Evanston's duty to defend under the Policy.

28.  The operative complaint in the Yu Litigation alleges improper handling of tenant security deposits, improper late fee charges, and improper debt collection practices by MG Properties. The plaintiffs allege that this conduct has "resulted in damages to former tenants…." (¶ 20.) Plaintiffs also allege that they and the class members "sustained injuries and damages arising from Defendants' common course

///

of conduct, and those injuries and damages were caused directly by the Defendants' wrongful conduct in violation of law as alleged." (¶ 36.)

29. These allegations bring the Yu Litigation squarely within the scope of the terms and coverage provisions of the Policy, which covers damages and claim expenses (i.e., defense costs) in connection with alleged Wrongful Acts or Personal Injury in the performance of property management services. Accordingly, Evanston has a duty to defend MG Properties against the allegations made by the Yu Litigation plaintiffs.

30. Under established California law, an insurer's duty to defend a claim is broader than its duty to indemnify and exists whenever the underlying claim is potentially covered by the insurance contract. *Montrose Chem. Corp. of California v. Superior Court*, 6 Cal.4th 287, 295-300 (1993) (*Montrose*). "To prevail, the insured must prove the existence of a *potential* for coverage, while the insurer must establish the absence of any such potential." *Montrose*, 6 Cal.4th at 300 (emphasis in original). The existence of this potential or possibility for coverage (and hence a duty to defend) is determined by a simple comparison of the allegations of the complaint (on the one hand) and the terms of the insurance policy (on the other hand). *Id.* at 295.

31. Under established California law, an insurer is obligated to provide a defense of the entire claim—both covered and *uncovered* causes of action. *See Buss v. Superior Court*, 16 Cal. 4th at 49. As to that obligation to defend matters involving both covered and uncovered claims, the California Supreme Court has ruled that "[t]o defend meaningfully, the insurer must defend immediately. [citations omitted] To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Id*.

32. Evanston's refusal to fulfill its duty to defend MG Properties is a derogation of its obligations under the Policy and well-settled California law.

/ / /

/ / /

33. Plaintiff and those acting on its behalf took reasonable and appropriate responsive actions and have incurred fees, costs, and expenses in defense of the Yu Litigation, the exact amounts of which have yet to be ascertained.

34. Plaintiff respectfully requests a judicial determination and declaration of Evanston's duty to defend it in the Yu Litigation. A judicial declaration of whether Defendant owes Plaintiff a duty to defend the Yu Litigation is necessary and appropriate at this time because Plaintiff has unreimbursed costs and expenses incurred in defense of the Yu Litigation for which Defendant has refused to pay.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

35. Plaintiff re-alleges and incorporates herein by reference the above and below allegations as if fully set forth herein.

36. Under the Policy, Evanston is obligated to defend MG Properties and pay in full on behalf of MG Properties its defense fees, costs, and liabilities incurred, and to be incurred, in the Yu Litigation. The complaint filed in the Yu Litigation constitutes a Claim first made during the Policy Period for Wrongful Acts and/or Personal Injury as those terms are defined in the Policy. The allegations of the operative complaint in the Yu Litigation fall within the scope of the terms and coverage provisions of the Policy. Accordingly, Evanston had and has a contemporaneous duty to defend Plaintiff against the allegations made by the Yu Litigation plaintiffs during the pendency of that case.

37. Under established California law, an insurer's duty to defend a claim is broader than its duty to indemnify and exists whenever the underlying claim is potentially covered by the insurance contract. *Montrose*, 6 Cal.4th at 295-300. "To prevail, the insured must prove the existence of a *potential* for coverage, while the insurer must establish the absence of any such potential." *Id.* at 300 (emphasis in original). The existence of this potential or possibility for coverage (and hence a duty

/ / /

to defend) is determined by a simple comparison of the allegations of the complaint (on the one hand) and the terms of the insurance policy (on the other hand). *Id.* at 295.

38. Under established California law, an insurer is obligated to provide a defense of the entire claim—both covered and *uncovered* causes of action. *See Buss v. Superior Court*, 16 Cal. 4th at 49. As to that obligation to defend matters involving both covered and uncovered claims, the California Supreme Court has ruled that "[t]o defend meaningfully, the insurer must defend immediately. [citations omitted] To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Id*.

39. Evanston has declined to contemporaneously and satisfactorily fulfill its defense obligations by refusing to provide coverage and defend its insured in the Yu Litigation.

40. Defendant's repeated and continued denial of coverage and refusal to uphold its duty to defend has forced MG Properties to continue funding its own defense of the Yu Litigation, long after exhaustion of the self-insured retention of the Policy, which is $25,000. Plaintiff reasonably expected Defendant would provide this benefit in exchange for the significant premium paid. (*See, e.g., Montrose, supra*, 6 Cal.4th at 295-96 ["The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability"].)

41. To defend itself in the Yu Litigation in the absence of a full and prompt defense from its Insurer, MG Properties incurred defense fees and costs that should have been paid by Evanston consistent with its obligation to defend claims potentially within the scope of coverage of the Policy.

42. Evanston has repudiated and breached its contractual obligations under the Policy to contemporaneously defend MG Properties in the Yu Litigation by refusing to pay for MG Properties' substantial unreimbursed defense fees and costs.

43. Defendant's refusal to provide Plaintiff with a contemporaneous and full defense denies Plaintiff the benefits for which it contracted under the Policy because Plaintiff is deprived of the bargained-for insurer-funded defense during the pendency of the Yu Litigation.

44. Accordingly, as a proximate result of Defendant's breaches of the Policy, Plaintiff has suffered damages, which Plaintiff has incurred and will continue to incur, plus interest thereon, the exact amount of which has yet to be ascertained.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith))

45. Plaintiff re-alleges and incorporates herein by reference the above and below allegations as if fully set forth herein.

46. Under the Policy, Evanston is obligated to defend MG Properties and to pay in full on behalf of MG Properties all defense fees, costs, and liabilities incurred, and to be incurred, in the Yu Litigation. The complaint filed in the Yu Litigation constitutes a Claim first made during the Policy Period for Wrongful Acts and/or Personal Injury as they are defined in the Policy. The allegations of the operative complaint in the Yu Litigation fall within the scope of the terms and coverage provisions of the Policy. Accordingly, Evanston had and has a contemporaneous duty to defend MG Properties against the allegations made by the Yu Litigation plaintiffs during the pendency of that action.

47. Defendant has breached its duties of good faith and fair dealing owed to Plaintiff under the Policy by, *inter alia*:

  a. Unreasonably failing to provide Plaintiff with a contemporaneous and full defense in the Yu Litigation, despite repeated demands, at a time when Defendant knew Plaintiff was entitled to such a defense under the terms of the Policy, as well as relevant insurance jurisprudence;

  b. Engaging in unreasonable interpretations of the Policy provisions and

analogous jurisprudence to avoid its defense obligations;

c. Failing to reasonably and thoroughly investigate and consider all bases for coverage under the Policy, including by ignoring and concealing potentially applicable coverage provisions of the Policy; and

d. Placing its own interests in minimizing its coverage obligations ahead of the interests of its insured;

48. Defendant's bad faith conduct is continuing in nature, as Defendant has steadfastly refused to reconsider its denial of coverage since May 2021, and continues to refuse to pay for Plaintiff's defense of the Yu Litigation through the present date.

49. In declining to fulfill its coverage obligations to Plaintiff under the Policy, Defendant acted unreasonably and with the knowledge that there was no reasonable basis for its conduct.

50. In addition, Plaintiff is informed and believes, and thereon alleges, that Defendant's bad faith conduct is not an isolated occurrence – Defendant employs a pattern and practice of denying coverage to other insureds for similar claims and/or based on the same exclusions it has relied on here in purported support of its denial.

51. As a proximate result of the aforementioned wrongful conduct of Defendant, Plaintiff has sustained damages and out-of-pocket expenses, including, but not limited to, attorneys' fees attributable to Plaintiff's efforts to obtain the coverage provided under the Policy and California law.

52. Defendant has tortiously withheld from Plaintiff benefits due under the Policy, and consistent with the holding of *Brandt v. Superior Court*, 37 Cal.3d 813 (1985), Plaintiff is entitled to recoup reasonable attorneys' fees expended to recover such benefits.

53. Evanston's conduct described herein, including but not limited to Evanston's refusal to consider Personal Injury as an alternative basis for coverage, was done with a conscious disregard of MG Properties' rights and with the intent to vex,

injure, or annoy Plaintiff.  Evanston carelessly disregarded the rights of its insured, and obstinately persisted in an ill-advised initial position.  Evanston's conduct constitutes oppression, fraud, or malice under California Civil Code § 3294, entitling MG Properties to punitive and exemplary damages in an amount appropriate to punish or set an example of Evanston.

## FOURTH CAUSE OF ACTION
### (SPECIFIC PERFORMANCE)

54. Plaintiff re-alleges and incorporates herein by reference the above and below allegations as if fully set forth herein.

55. Plaintiff is insured by Defendant under a specifically enforceable contract sufficiently certain in its terms, i.e., the Policy.  (*See* Exhibit B.)

56. At all pertinent times, the required premiums were paid to Defendant by Plaintiff with respect to the Policy, and the Policy was, and is, in full force and effect.  Thus, Defendant received adequate consideration for the Policy.

57. The provisions of the Policy requiring Defendant to defend Plaintiff in the Yu Litigation are just and reasonable.

58. Despite multiple requests by Plaintiff for a defense of the Yu Litigation, Defendant has refused to provide a defense and has denied that there is coverage.  Thus, Plaintiff was compelled to fund its own defense and protect its interests in the Yu Litigation.

59. Defendant has breached its contractual obligations under the Policy in relation to the Yu Litigation by refusing to fully defend Plaintiff.

60. If Defendant does not immediately defend Plaintiff, Plaintiff will be irreparably harmed, in that its defense of, and/or its prospects of settlement in, the Yu Litigation will be hindered.

/ / /

/ / /

/ / /

# **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. For a judicial determination and declaration of the rights and duties of the parties under the Policy with respect to the Yu Litigation;
2. For actual damages according to proof;
3. For special damages according to proof;
4. For consequential damages according to proof;
5. For interest at the maximum legally permissible rate from the date of the initial breaches;
6. For attorneys' fees;
7. For Punitive and exemplary damages;
8. For costs of suit incurred herein; and
9. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: February 23, 2023     PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: *s/ Alexandra "Sasha" Selfridge*
Alexandra "Sasha" Selfridge
David W. Gouzoules
Attorneys for Plaintiff GLEIBERMAN PROPERTIES, INC.