UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEIBERMAN PROPERTIES, INC., a California corporation doing business as MG Properties Group,<br><br>Plaintiff,<br><br>v.<br><br>EVANSTON INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No.: 23-CV-356 JLS (AGS)<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS AND (2) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(ECF Nos. 10, 14) |

Presently before the Court are Defendant Evanston Insurance Company's ("Defendant" or "Evanston") Motion to Dismiss ("MTD," ECF No. 10) and Plaintiff Gleiberman Properties, Inc.'s ("Plaintiff" or "Gleiberman") Motion for Partial Summary Judgment ("MPSJ," ECF No. 14). Plaintiff filed an Opposition to the Motion to Dismiss ("MTD Opp'n," ECF No. 15), and Defendant submitted a Consolidated Opposition to Plaintiff's Motion for Partial Summary Judgment and Reply in Support of Defendant's Motion to Dismiss ("Def. Response," ECF No. 16). Finally, Plaintiff filed a Reply in Support of Motion for Partial Summary Judgment ("Reply MSJ," ECF No. 18). The Court

vacated the hearing on both motions and took them under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 17. Having considered Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties' briefing, and the applicable law, the Court **DENIES** Defendant's Motion to Dismiss and **GRANTS** Plaintiff's Motion for Partial Summary Judgment.

## BACKGROUND

Plaintiff owns and manages apartment complexes in California. *See* Compl. ¶ 1, 7–8; ECF No. 1-2 at 3. In June 2020, Plaintiff purchased a Professional Liability insurance policy (the "Policy") from Defendant. Compl. ¶ 11. The Policy was effective from May 15, 2020, to May 15, 2021. *Id*. Relevant here, the Policy provides that:

> [Defendant] shall pay on behalf of [Plaintiff] all sums in excess of the Deductible . . . which [Plaintiff] becomes legally obligated to pay as Damages and Claim Expenses incurred as a result of a Claim first made against [Plaintiff] during the Policy Period . . . by reason of a:
> 1. Wrongful Act or
> 2. Personal Injury;
> in the performance of Professional Services . . . .[1]

ECF No. 1-3 at 17.[2] Notably, the Policy defines "Personal Injury" as including "[l]ibel, slander or defamation." *Id.* at 22.

On the other hand, the Policy provides numerous exclusions from coverage. Three exclusions are important for the purposes of the instant Order. First, the Policy bars coverage for any Claim "[b]ased upon, arising out of, or in any way involving . . . [t]he gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled." *Id.* at 26. The Court will refer to this exclusion as the "Illegal Profits Exclusion." Second, the Policy bars coverage for any Claim "[b]ased upon or arising out

---

[1] The Policy places emphasis on various words and phrases through the use of bold font. All quotations of the Policy in this Order will omit said emphases.

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

of . . . [a]ny conversion, misappropriation, commingling of or defalcation of funds or property." *Id.* at 25. The Court will refer to this exclusion as the "Conversion Exclusion." Third, the Policy only provides coverage for claims for "Damages," which does not include claims for "[t]he return, withdrawal, reduction, restitution or payment of any fees, profits, charges or royalties for services or consideration or any expenses paid or payable to [Plaintiff] for services or goods." *See id.* at 21–22. The Court will refer to this exclusion as the "Restitution Exclusion."

On February 26, 2021, three of Plaintiff's former tenants filed a class action complaint against Plaintiff in San Diego Superior Court, alleging Plaintiff's security deposit policies were unlawful. Compl. ¶ 7. Later, on August 9, 2021, the former tenants filed another complaint against Plaintiff, alleging Plaintiff's late fee policies were unlawful. *Id.* The two complaints were ultimately consolidated and amended in a filing dated October 7, 2021 (hereinafter, the "*Yu* Complaint"[3]). *Id.* Generally, the *Yu* Complaint alleges Plaintiff "improperly retains tenant security deposits, charges excessive late fees, and employs unfair debt collection practices." *Id.* The former tenants (hereinafter, the "*Yu* Plaintiffs") further allege that Plaintiff "caused improper bills and collection notices to be sent to former tenants, which 'resulted in damages to former tenants both through the collection of such amounts and by the reporting of such alleged debts to third-parties, defaming former tenants, damaging their credit and impairing their ability to rent other apartments.'" *Id.* ¶ 8 (quoting ECF No. 1-2 at 12). The *Yu* Plaintiffs assert three causes of action: (1) unlawful retention of security deposits in violation of California Civil Code § 1950.5; (2) unfair competition in violation of California Business and Professions Code § 17200; and (3) unlawful liquidated damages in violation of California Civil Code § 1671. ECF No. 1-2 at 19–21.

/ / /

---

[3] The underlying action is titled *Yu v. Gleiberman Properties Inc.*, Case No. 37-2021-00008418-CU-OR-CTL. *See* ECF No. 1-2 at 2.

On March 16, 2021, Plaintiff submitted the original complaint in the *Yu* litigation to Defendant, requesting coverage for the claims pursuant to the Policy. Compl. ¶ 22. Defendant denied the request on the basis of the Illegal Profits, Conversion, and Restitution Exclusions, among others. *Id.* ¶ 23; *see generally* MTD. Following Defendant's denial of coverage, Plaintiff filed the instant Complaint on February 23, 2023. *See generally* Compl. Plaintiff asserts causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 35–53. Plaintiff also requests declaratory relief, *id.* ¶¶ 26–34, and specific performance, *id.* ¶¶ 54–60.

On April 7, 2023, Defendant filed a Motion to Dismiss the Complaint for failure to state a claim. *See generally* MTD. Defendant argues that Plaintiff "cannot state a claim for breach of contract or bad faith (and cannot obtain a declaration that coverage is owed under the policy or a decree ordering specific performance)" because its "denial of Coverage for the *Yu* Action was clearly proper under the plain language of the policy." Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint ("MTD Mem.," ECF No. 10-1) at 7.

Subsequently, on May 11, 2023, Plaintiff filed a Motion for Partial Summary Judgment Regarding the Duty to Defend. *See generally* MPSJ. "By way of [the Motion for Partial Summary Judgment], Plaintiff seeks a single straightforward judicial determination: that [Defendant] had and has a duty to defend [Plaintiff] in the underlying lawsuit." Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment Regarding the Duty to Defend ("MPSJ Mem.," ECF No. 14-1) at 8.

## LEGAL STANDARDS

### I. Motion to Dismiss—Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*  Finally, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

/ / /

1    Where a complaint does not survive the Rule 12(b)(6) analysis, the Court will grant
2 leave to amend unless it determines that no modified contention "consistent with the
3 challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*,
4 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture
5 Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "The Ninth Circuit has instructed that the policy
6 favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp.,
7 P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v.
8 Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## II. Motion for Summary Judgment—Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

1   Once the moving party satisfies this initial burden, the nonmoving party must
2   identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S.
3   at 324. This requires "more than simply show[ing] that there is some metaphysical doubt
4   as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
5   586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own
6   affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'
7   designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for
8   the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-
9   moving party cannot oppose a properly supported summary judgment motion by "rest[ing]
10  on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## DEFENDANT'S MOTION TO DISMISS

The Parties' dispute essentially revolves around the issue of whether the *Yu* Plaintiffs' allegations of defamation give rise to a duty to defend despite the Policy's coverage exclusions. Defendant argues they do not. According to Defendant, the *Yu* Plaintiffs' allegation that Plaintiff "improperly retains tenant security deposits, charges excessive late fees, and employs unfair debt collection practices," Compl. ¶ 7, falls within the Policy's Illegal Profits and Conversion exclusions, MTD Mem. at 13–17. The *Yu* Plaintiffs' oblique references to defamation do not override the application of the Illegal Profits and Conversion exclusions because "the alleged defamation is based upon and/or arises out of the wrongful retention and conversion of security deposits." *Id*. at 18. Finally, "none of the relief sought in the *Yu* action would qualify as covered 'Damages,'" according to Defendant. *Id*. at 14 n.3

Plaintiff, on the other hand, argues the *Yu* Plaintiffs' allegations of defamation "squarely fit within the insuring agreement of the Policy, which, per its express language, covers 'damages' ('the monetary portion of any judgment, award or settlement') and defense costs incurred by reason of both a 'wrongful act' (a negligent act, error, or omission in connection with property management services, including 'management of tenant relationships' and 'collection of rent . . . []') and 'personal injury' ('[l]ibel, slander, or

defamation')." MTD Opp'n at 14 (quoting Compl. ¶¶ 13–18). Further, according to Plaintiff, neither the Illegal Profits nor the Conversion exclusions bar coverage for the *Yu* Litigation. *Id.* at 15–23.

The Court will first discuss whether the *Yu* Plaintiffs' allegations of defamation could give rise to a duty to defend, and then address whether any of the Policy's exclusions serve as a bar to coverage.

## I. Duty to Defend

"An insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy. An insurer must defend against a suit even 'where the evidence suggests, but does not conclusively establish, that the loss is not covered.'" *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 258 (Cal. 2014) (internal citations omitted) (quoting *Montrose Chem. Corp. v. Superior Ct.*, 861 P.2d 1153, 1160 (Cal. 1993)). "In resolving the question of whether a duty to defend arises under a policy, the insurer has a higher burden than the insured." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002). "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp.*, 861 P.2d at 1161 (emphasis in original).

"[A]n insurer has a duty to defend the entire third party action if any claim encompassed within it potentially may be covered." *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 797–98 (Cal.), *as modified on denial of reh'g* (May 13, 1993); *see also Buss v. Superior Ct.*, 16 Cal. 4th 35, 48, 939 P.2d 766 (Cal. 1997) ("[W]e can, and do, justify the insurer's duty to defend the entire 'mixed' action prophylactically, as an obligation imposed by law."). "[A]n insurer may be excused from a duty to defend only when 'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" *Hartford Cas. Ins. Co.*, 326 P.3d at 258 (quoting *Montrose Chem. Corp.*, 861 P.2d at 1160).

/ / /

/ / /

"The first step in determining whether the duty to defend is triggered is to compare the allegations of the complaint—and '[f]acts extrinsic to the complaint'—with the policy terms to see if they 'reveal a possibility that the claim may be covered by the policy.'" *Pension Tr. Fund for Operating Eng'rs*, 307 F.3d at 949 (quoting *Horace Mann Ins. Co.*, 846 P.2d at 795). "Under California law, courts look to the facts alleged in the complaint, and not the 'technical legal cause of action pleaded,' to determine whether a duty to defend exists." *Rizzo v. Ins. Co. of State of Pennsylvania*, 969 F. Supp. 2d 1180, 1189 (C.D. Cal. 2013), *aff'd in part, remanded in part sub nom. Rizzo v. Ins. Co. of Pennsylvania*, 632 F. App'x 889 (9th Cir. 2015). Indeed, "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Tr. Fund for Operating Eng'rs*, 307 F.3d at 951; *see also Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005) ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.").

"However, the insured 'may not speculate about unpled third party claims to manufacture coverage,' and the insurer has no duty to defend where the potential for liability is 'tenuous and farfetched.'" *Michaelian v. State Comp. Ins. Fund*, 58 Cal. Rptr. 2d 133, 141 (Ct. App. 1996) (first quoting *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 18 Cal. Rptr. 2d 692, 699 (Ct. App. 1993); then quoting *Am. Guarantee & Liab. Ins. Co. v. Vista Med. Supply*, 699 F. Supp. 787, 794 (N.D. Cal. 1988)), *as modified* (Dec. 11, 1996). "The ultimate question is whether the facts alleged 'fairly apprise' the insurer that the suit is upon a covered claim." *Id.* (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 n.15 (Cal. 1966)). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. Corp.*, 861 P.2d at 1160.

Here, the Court finds that the *Yu* Plaintiffs' allegations of defamation potentially give rise to coverage under the Policy. As stated above, the Policy provides that "[Defendant] shall pay on behalf of [Plaintiff] all sums" over the deductible that Plaintiff

"becomes legally obligated to pay as Damages . . . incurred as a result of a Claim" against Plaintiff "by reason of a . . . Personal Injury" while performing "Professional Services." ECF No. 1-3 at 17. A "Claim" is defined as "[a] written demand for Damages or remedial Professional Services" or "[t]he service of a suit . . . against [Plaintiff]." *Id.* at 21. "Damages means the monetary portion of any judgment, award or settlement." *Id.* And, as noted above, the Policy defines "Personal Injury" as including "[l]ibel, slander or defamation." *Id.* at 22, 41. Finally, "Professional Services" means "Real Estate Services," "Property Management Services," and other designated services rendered for others for a fee. *Id.* at 41. In light of the foregoing, the Court concludes that a plain reading of the Policy is that it provides coverage for a suit against Plaintiff for monetary damages that alleges that Plaintiff defamed someone while rendering Property Management Services.

Next, the Court compares the policy terms to the allegations in the *Yu* Complaint. *See Pension Tr. Fund for Operating Eng'rs*, 307 F.3d at 949. The *Yu* Plaintiffs allege that:

> [Gleiberman's] unreasonable, excessive, unlawful, unenforceable and/or unsubstantiated charges made against former tenants' security deposits often exceed the amount of the deposit held by [Gleiberman]. When this occurs, [Gleiberman] cause a bill, and sometimes a collections notice, to be sent to former tenants, knowing that the monies claimed are based upon fraudulent, unreasonable, excessive, unlawful, unenforceable and/or unsubstantiated move-out charges. This conduct has resulted in damages to former tenants both through the collection of such amounts and by the reporting of such alleged debts to third-parties, defaming former tenants, damaging their credit and impairing their ability to rent other apartments.

ECF No. 1-2 at 12. In other words, the *Yu* Plaintiffs accuse Plaintiff of defaming them by reporting to third parties unlawful debts stemming from fraudulent "move-out charges," which has "resulted in damages" that include negative impacts on the *Yu* Plaintiffs' credit and ability to lease other apartments. *Id.*

/ / /

/ / /

Viewing these allegations alongside the Policy's terms, the Court is satisfied that, "under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended" to state a covered claim of defamation. *Scottsdale Ins. Co.*, 115 P.3d at 466. The *Yu* Plaintiffs claim that: (1) Plaintiff defamed them; (2) the defamation stemmed from Plaintiff's attempt to collect property management-related "move-out charges"; and (3) the defamation resulted in "damages." Such allegations give rise to the potential for coverage under the terms of the Policy. *See State Farm Gen. Ins. Co. v. Phillips*, 591 F. Supp. 3d 680, 687–88 (C.D. Cal. 2022) (finding that underlying complaint's allegation that the insured sent anonymous letters defaming third-party plaintiff was sufficient to support potential liability despite the underlying complaint's lack of a formal claim for defamation and the defamation allegations not being the "dominant factor" of the underlying complaint); *Fed. Ins. Co. v. Golden Eagle Ins. Corp.*, No. 05cv1853-L(LSP), 2007 U.S. Dist. LEXIS 46148 at *13 (S.D. Cal. June 26, 2007) (finding underlying complaint triggered duty to defend where complaint could be amended to assert defamation claim "because any such amendment would be supported by facts already alleged").

Defendant argues that the *Yu* Plaintiffs do not "seek damages for defamation in the *Yu* action," nor could they "in a class action setting as here where the liability and damages inquiry would be so individualized." Def. Response at 17. First, Defendant's argument that the *Yu* Plaintiffs do not seek damages for defamation is inaccurate. The *Yu* Complaint specifically requests "actual damages sustained by Class members," ECF No. 1-2 at 22, which would encompass damages resulting from "the reporting of . . . alleged debts to third parties, defaming former tenants, damaging their credit and impairing their ability to rent other apartments," *id.* at 12. Moreover, such damages fall within the Policy's coverage, as they do not constitute "[t]he return, withdrawal, reduction, restitution or payment of any fees, profits, charges or royalties for services or consideration or any expenses paid or payable to [Plaintiff] for services or goods." ECF No. 1-3 at 22.

/ / /

Second, Defendant has not pointed to, and the Court is not aware of, any authority that would prevent the *Yu* Plaintiffs from amending the complaint to state a claim for defamation. Defendant cites to *Los Angeles Fire & Police Protective League v. Rodgers*, 86 Cal. Rptr. 623, 627 (Ct. App. 1970), in support of its argument that the *Yu* Plaintiffs cannot seek covered damages for defamation in a class action setting, and, therefore, the *Yu* Plaintiffs' allegations of defamation do not trigger the duty to defend. Def. Response at 17. In that case, however, the defamatory statement was directed at three specific members of the Los Angeles Fire & Police Protective League who allegedly assaulted a criminal suspect. *Los Angeles Fire & Police Protective League*, 86 Cal. Rptr. at 626. Accordingly, it could not "properly be concluded that by reason of a statement that three officers brutally manhandled a suspect, members of the public who heard the statement would reasonably infer that all other officers (4,997) in the police department engaged in brutality." *Id.* at 627. As such, "no cause of action was stated as to the league." *Id.* The Second District Court of Appeal further concluded that it "appear[ed]" that the "plaintiff league [could not], as a matter of law, maintain an action for damages for alleged defamation of such a large group (5,000) of persons." *Id.* To support this assertion, the Second District Court of Appeal cited to various sources, *id.*, one of which is *Noral v. Hearst Publications*, 104 P.2d 860 (Cal. 1940). *Noral* stands for the basic proposition that "[w]here a group is very large and nothing that is said applies in particular to the plaintiff he cannot recover," *Noral*, 104 P.2d at 862. Consequently, it appears that the Second District Court of Appeal's conclusion that the plaintiff league could not, "as a matter of law," assert an action for damages for defamation rested on the fact that no defamatory statement was directed at the plaintiff league or its 4,997 members who were not involved in the alleged assault. Nothing in *Los Angeles Fire & Police Protective League* furthers Defendant's argument that plaintiffs in a class action cannot seek damages for defamation.

Defendant's citation to *Frieman v. San Rafael Rock Quarry, Inc.*, 10 Cal. Rptr. 3d 82 (Ct. App. 2004), is also inapposite. That case concerns issues relating to class certification. *See generally id.* (affirming superior court order denying class certification).

*Frieman* is silent on the ability of named plaintiffs in a class action suit to amend their complaint to state a claim for defamation or seek damages for defamation. *See generally id.* Finally, Defendant's citation to Justice Benke's concurring opinion in *Reyes v. San Diego County Board of Supervisors*, 242 Cal. Rptr. 339, 350–51 (Ct. App. 1987), is inapposite for the same reason. *See id.* (discussing "the difficulty and danger in examining the number of issues at the class certification stage").

Finally, Defendant alleges that the *Yu* Complaint "does not allege that all class members were defamed through collection activities" because it "alleges only that 'often times' the charges imposed exceeded the security deposit and that only 'sometimes a collections notice' was issued." Def. Response at 17. Therefore, in Defendant's view, the "purported defamation was not 'class-wide,' relief for defamation is not a common question, and damages for defamation are not and cannot be sought." *Id.* A brief review of the *Yu* Complaint's actual allegations, included verbatim *supra*, reveals that Defendant's argument mischaracterizes the language contained therein. The *Yu* Plaintiffs clearly allege that Plaintiff imposes unlawful "move-out charges" on former tenants, then reports debts stemming from those charges to third parties, thereby defaming former tenants. Contrary to Defendant's interpretation, the *Yu* Complaint does not allege that such conduct is exclusive to some fraction of the putative class. Moreover, even if such alleged conduct did not apply to all class members, whether defamation constitutes a common question is an issue separate and distinct from the issue of whether the *Yu* Plaintiffs may amend the complaint to seek damages for allegedly defamatory statements.

In sum, the Court finds that Plaintiff has demonstrated that the *Yu* Complaint gives rise to the potential for coverage.

## II. The Policy's Exclusions

"Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit 'can by no conceivable theory raise a single issue [that] could bring it within the policy coverage.'" *Pension Tr. Fund for Operating Eng'rs*, 307 F.3d at 949 (quoting *Montrose Chem. Corp.*, 861 P.2d at

1160). Defendant argues that the Illegal Profits and Conversion exclusions "apply for any Claim 'based upon or arising out of' the excluded conduct and that any allegations related to defamation necessarily arose out of the alleged (and excluded) wrongful profit and/or conversion allegations." Def. Response at 19 (emphasis omitted). Plaintiff counters that Defendant has failed to establish that either the Illegal Profits or Conversion exclusions are complete bars to coverage. MTD Opp'n at 15–20. Further, "the alleged defamation and debt reporting is distinct, separate, and independent from the alleged retention of security deposits, wrongful profits, and conversion which Defendant contends are excluded." *Id.* at 23.

"Under California law, interpretation of an insurance policy is a question of law, subject to the ordinary rules of contractual interpretation." *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 847 (9th Cir. 2020). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior Ct.*, 833 P.2d 545, 552 (Cal. 1992). If the policy's language is clear, it governs; if it is ambiguous, "it is generally resolved against the insurer and in favor of coverage." *AXIS Reinsurance Co.*, 975 F.3d at 847. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal.), *as modified on denial of reh'g* (Oct. 26, 1995).

"[A]n exclusion or limitation on coverage must be clearly stated and will be strictly construed against the insurer." *Smith Kandal Real Est. v. Cont'l Cas. Co.*, 79 Cal. Rptr. 2d 52, 56 (Ct. App. 1998). On the other hand, "[i]n California, the phrase 'arising out of' is construed broadly, even if in an exclusion." *Trenches, Inc. v. Hanover Ins. Co.*, 575 F. App'x 741 (9th Cir. 2014). "'California courts generally have construed the term "arising out of" as having broader significance and connoting more than causation,' and some have equated it with 'origination, growth or flow[ing] from the event.'" *Church Mut. Ins. Co. v. U.S. Liab. Ins. Co.*, 347 F. Supp. 2d 880, 885 (S.D. Cal. 2004) (quoting *Smith Kandal Real Est.*, 79 Cal. Rptr. 2d at 59); *see also Fibreboard Corp. v. Hartford Accident & Indem.*

*Co.*, 20 Cal. Rptr. 2d 376, 383 (Ct. App. 1993) (noting the phrase "arising out of" is "ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of[,]' or 'flowing from[,]' or in short, 'incident to, or having connection with'"). Described differently, the term "links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy." *Davis v. Farmers Ins. Grp.*, 35 Cal. Rptr. 3d 738, 744 (Ct. App. 2005).

As explained above, the Policy here provides coverage for property management-related defamation claims against Plaintiff for monetary damages. *Supra* p. 10. Yet, the Policy excludes coverage for claims "[b]ased upon, arising out of, or in any way involving . . . [t]he gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled" (the "Illegal Profits Exclusion"), ECF No. 1-3 at 26, or "[b]ased upon or arising out of . . . [a]ny conversion, misappropriation, commingling of or defalcation of funds or property" (the "Conversion Exclusion"), *id.* at 25. Accordingly, the Policy may be interpreted to provide coverage for defamation claims, so long as those claims do not "originat[e], grow[] or flow" from illegal profits or conversion. *See Church Mut. Ins. Co.*, 347 F. Supp. 2d at 885.

Here, the Court finds that the Policy's Illegal Profits and Conversion exclusions do not bar coverage for the *Yu* Plaintiffs' claims. The *Yu* Plaintiffs allege Gleiberman defamed them by reporting unlawful debts to third parties. Such communications do not "originat[e], grow[] or flow" from illegal profits or conversion. Both the Illegal Profits and Conversion exclusions bar coverage for claims related to funds of which the insured is already in possession. But the *Yu* Plaintiffs' defamation allegations relate to funds which Gleiberman claims it is owed but has not yet received. As Plaintiff notes, its "actions with respect to amounts which have not yet been paid to [it] cannot constitute conversion or the retention of profits to which it was not entitled." MTD Opp'n at 23. Consequently, the *Yu* Plaintiffs' allegations of defamation do not arise out of or involve excluded conduct; on the contrary, such allegations represent a distinct "factual situation" (unlawful debts

/ / /

stemming from "move-out charges") that is linked to a separate "event creating liability" (reporting said debts to third-parties). *Davis*, 35 Cal. Rptr. 3d at 744.

### III. Conclusion

The Court finds that Plaintiff has demonstrated that the *Yu* Complaint gives rise to the potential for coverage, and that Defendant has failed to establish that the Policy's exclusions serve to bar coverage. While the Parties devote considerable ink to the question of whether the Policy is ambiguous, the Court need not address the issue in light of these conclusions. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 10).

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's Motion for Partial Summary Judgment solely requests that the Court determine whether Defendant "had and has a duty to defend [Plaintiff]" in the *Yu* Action. Given the Court's findings in its ruling on Defendant's Motion to Dismiss, the Court concludes that the *Yu* Complaint triggered Defendant's duty to defend. *See Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 258 (Cal. 2014) ("An insurer must defend against a suit even 'where the evidence suggests, but does not conclusively establish, that the loss is not covered.'" (internal citations omitted) (quoting *Montrose Chem. Corp.*, 861 P.2d at 1160)); *id.* ("[A]n insurer may be excused from a duty to defend only when 'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" (quoting *Montrose Chem. Corp.*, 861 P.2d at 1160)); *Horace Mann Ins. Co.*, 846 P.2d at 797–98 ("[A]n insurer has a duty to defend the entire third party action if any claim encompassed within it potentially may be covered."). Defendant's Consolidated Opposition to Plaintiff's Motion for Partial Summary Judgment and Reply in Support of Defendant's Motion to Dismiss Complaint does not raise any new arguments that warrant discussion. Consequently, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment (ECF No. 14).

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 10) and **GRANTS** Plaintiff's Motion for Partial Summary Judgment (ECF No. 14). The Court finds that Defendant Evanston Insurance Company had and has a duty to defend Plaintiff Gleiberman Properties, Inc., d/b/a MG Properties in connection with the underlying action entitled *Christian Yu v. Gleiberman Properties, Inc.*, San Diego Superior Court Case No. 37-2021-00008418-CU-OR-CTL.

**IT IS SO ORDERED.**

Dated: August 15, 2023

Hon. Janis L. Sammartino
United States District Judge